Good morning. May it please the Court. My name is Anna Benvenue, appearing for Petitioner Hector Ramirez. Today the Court's tasked with reviewing a childhood endangerment statute and determining whether that statute, which can be violated by criminal negligence and neglect alone, necessarily requires the use of force as an element or involves a substantial risk of force will be involved. Here you have a burden. You get to review this under a de novo standard, and you're considering whether the government's met its incredibly high burden of proving by clear, convincing, and unequivocal evidence that 273A sub a necessarily involves force. So the briefs that were filed in this case are very old. Yes, Your Honor. They precede some very significant cases. Yes. I don't think the new cases, while they help instruct, perhaps, I don't think they change the results here at all. So you don't think this camp sets a new overlay? I really don't. I mean, I think Decomp, with regard to this particular case, I think it helps illustrate to the Court and remind the Court what the purpose of the modified categorical is and what exactly the reach is, and that we're not looking at the underlying facts of this conviction or what this defense is. And that's all you think it's worth in this particular case? In this context, yeah. I mean, well, I'm not, I don't think you certainly, to the extent that... I mean, it tells us when we should go to the modified categorical approach and when we shouldn't, right? Sure. And so I guess... What does it tell us about that? Well, the question arises then, right, is there an argument under Decomp that 273A sub a is indivisible? And is it or isn't it? I mean, it's not totally clear to me, Your Honor. I think that there could be an argument that can be made there, but I think under the modified, it's so clearly not, even under the modified, it's so clearly not a crime of violence, that it kind of doesn't matter. You could certainly approach it under the categorical. We only get to the modified if we determine that it's divisible. Fair enough. And there's a lot of case law about three of the prongs of the four, of 273A sub a, that says that criminal negligence applies. And there's one, not much, about that prong two. So you're saying that if we follow the statute, covers non-intentional conduct? Yes. I think I went either way, under the categorical or the modified categorical. I agree with you, of course, Your Honor, that it's inappropriate to proceed to the modified. And certainly at the time that the briefing was done, there was much less strong argument that we win under the categorical. And I think that argument perhaps is stronger today. And I'm happy to provide supplemental briefing if the court wants to approach it that way. But I also think it's so very clear that three of the four ways to violate the statute of criminal negligence and the record of conviction here just simply doesn't show what theory the jury convicted on. So there's no way. So your opponent wants to rely on the appellate court decision that talks about some of the evidence, which is really pretty much all we have about what the evidence is. And I take it your position is you can't rely on that under the modified categorical approach. And there's, I have two positions. The first is I'm not, I don't think that the, that unpublished decision is a part of the record of conviction, but it almost, it doesn't even matter. And I think that's what I was pointing to earlier, that what Decomp helps us do is all that evidence that's recited, that's underlying conduct that Decomp makes very clear is not before you today. There is no, it is improper for this court under Decomp, under the modified categorical to look at that evidence section in that decision. So even assuming that it is a part of the record of conviction, it doesn't add to, because it doesn't say exactly what the jury, which theory the jury convicted on. And that's not unusual. Evidence is rarely going to show what exactly the jury found. So here, the record of, and when it goes to a jury trial, and in a case where there's a plea, it's a different situation. But here, because it went to jury and there was no special verdict and the jury, and the criminal appeal decision doesn't say the jury convicted on prong one or prong three or two. So there's, the record of conviction here clearly can't show what exactly the theory was. Are you familiar with our recent case in U.S. v. Rendon? Yes, Your Honor. Okay. Does that help you or hurt you? I think, again, it goes to... Or is it irrelevant to you? Yeah, it goes to the initial question about kind of whether Decomp in this changing landscape changes things and whether the categorical should apply. And I don't think Rendon actually changes the analysis here at all. Even, I think Decomp would more. I think we have Young v. Holder, which also came out after these briefs, the en banc decision in Young, which kind of clarified any existing question in our Ninth Circuit law about the use of the conjunctive and disjunctive statutory language. And to the extent that that was not totally settled at the time of the briefing, I think Young makes clear that even though the information here was charged in the conjunctive, that because the statutory language is written in the disjunctive, all we know is that he was convicted of something in that statute. The jury found enough evidence to convict on one prong or another, but we don't know which one. And because here the government has to show by clear convincing and equivocal evidence that there's an element of force, and because so many of the prongs of the statute only require criminal negligence, there's just no way they can meet their burden under either the categorical or the modified. And with regard to the enhancement, I think that's another issue that comes up. And, you know, in our briefing, we argued that the board didn't rely on the enhancement and that under the pre-apprendee standard, that the enhancement wasn't required to be proven beyond a reasonable doubt. But again, it doesn't even matter. So I understand why you're arguing it doesn't matter. We have to decide whether this statute is divisible or not. Sure. Yeah. We do. We have to because we have to decide as a matter of precedent whether this crime is going to be considered categorically. Was it a crime of violence? Is that what we're talking about at this point? And so we have to make that decision. So what's your argument that it is not divisible? Well, the argument that it's not divisible is that under prong two, that you only need a presumption of committing this neglect or infliction. Just theories. Right. There are theories upon which the court can rely. And I think that under de Camp is a reasonable argument to make now. And if the court wants supplemental briefing, I could provide probably a 10-page brief that would lay that out. De Camp talks about elements. Right. And means and which one is which. And I think that under de Camp, there's an argument that each of each of the different prongs of the statute are, in fact, means of committing the statute rather than separate elements. The California case law on this statute talks about how it's an omnibus statute with divisible sets of prongs. But I think in light of de Camp and in the immigration context that and when you look at the jury instructions, the 2000 jury instructions that applied in at the time Mr. Ramirez was convicted, it makes clear that each of those, I think each of those is in fact means rather than elements of committing the crime. So I think that there actually is a pretty strong argument to answer your question that in fact, this is an indivisible statute in light of de Camp. And if not, if you kind of go with the way the California case law talks about it as four divisible crimes, that there, because criminal negligence is what's required, that, again, there's no way to know. And that the government, California, the California case law is uniform on that point. And whether it's different legal theories or whether it's different elements. How do we know? Well, I'm I'm suggesting that I don't I don't because this is a whole this is a new structure that we're looking at these cases under. I'm wondering if some of the California cases hold that as an alternative theory and some of them hold that there are different elements. It seems like the cases and the run red alongside the jury instructions, people will be sergeant as an instructive case and then people versus Valdez. Yeah, Valdez kind of talk those two cases kind of instruct on direct and indirect and passive and active conduct. And because both you can violate the statute through indirect or direct conduct and passive or active conduct. And each of those kind of prongs is really just the first element. When you read the jury instructions, the first element is like, was there circumstances involving that would likely to lead to great bodily injury or death? And then prong to kind of seems to be one of those means. When you read the jury instructions, that's how it looks. So I think probably everybody would agree that that's really complicated. California law isn't a model of clarity. So if that's the case, what are the what are the Supreme Court's cases tell us about where the burden of the uncertainty like you started off saying the government has some burden? Yeah. So the government we're in a deportability context, a question of whether or not Mr. Ramirez is deportable. And in that case, it's the government's respondents burden to show that he's deportable by clear, convincing and unequivocal evidence. And that standard is talking about more about the statutory. In other words, determining whether the statute's divisible or indivisible. If we don't know because the state law isn't clear, where does the burden of the uncertainty lie? Oh, I see what you're saying. Who loses, in other words. Yeah, well, I think I think that no one loses here. I mean, well, respondent has to lose here, I guess, because to the extent who has to. It's typically to the government's advantage to use the modified categorical approach because it opens up more things. Does the government have a burden to meet in order to show that the statute is divisible? I think so. Yeah. As a part of their burden to show that he's deportable, they have to show that it's then divisible and that the record of conviction would meet that burden. OK. And so I think any ambiguity there would be resolved, again, in favor of petitioner. But I also think that it doesn't. Hasn't the Supreme Court said that? That you resolve ambiguity in favor of the petitioner? Yes, Your Honor. And in addition to that, under the categorical or the modified categorical, the either just looking at the statute alone or looking at the record of conviction, that just the evidence just doesn't show by clear, convincing and unequivocal evidence that there's a use of force or that this crime by its very nature requires force. I'll reserve the rest of my time. Thank you. Good morning, Your Honors. Anne-Mai Wendel on behalf of the United States Attorney General. In order to resolve the question here, which is whether or not petitioner's convictions for enhanced felony child abuse constitute a crime of violence, the court needs to consider three important matters. The first item is the question of divisibility. Is the statute divisible? Here, the agency and the state president reflects that the statute is divisible, but the courts or the developments in Rendon do cast a question as to whether or not that. I also call that into question. Your Honor. I mean, DeCamps tells us to look at the focus should be on the elements of the statute. Yes, Your Honor. So is the statute the various ways in which it can be violated? Are they just means or theories about how the jury could return a verdict? Or are they pure elements as DeCamps tells us what we should look for? Your Honor, they are elements in the context of DeCamps because DeCamps and the subsequent case law has established that if there are different elements or there's different, effectively different crimes, then that constitutes. The statute's not written in, you know, just typical California statute just lists a bunch of big long sentences, a bunch of ways in which the statute, in which the offense could be three or four separate statutes. Your Honor, because... Three separate crimes. The crimes, because the four branches of conduct that the Supreme Court of California has identified require, three of them require a different type of mens reo. So three of them require just a criminal negligence. That's not going to do it, right? Correct. So if it's not divisible, you lose. Yes, Your Honor. The first question, there's three different issues that the court would have to consider, but the first hurdle is whether or not the statute is divisible. The agency didn't consider that question because that wasn't an issue here before, and so there was never any assessment as to whether or not, because... I mean, standing here right now, if it's an indivisible statute, you can't prevail because it permits convictions based on negligence. Yes, Your Honor. Okay. And the other part of the statute requires general criminal intent, and that would be under the second branch of conduct. So because the state law... That's the acting part. Yes, Your Honor. So the case law reflects that there are passive, and as the agency also recognized, there is passive as well as indirect, or I'm sorry, as direct action. And there's only one branch of conduct that the state has recognized as being one that requires general criminal intent. So if it's a divisible statute, what's the evidence you rely on to show that Mr. Ramirez was convicted of what we would call a crime of violence? Your Honor... Just charged in the language of the statute as a whole, which includes both the intent and the negligence part. So you can't take anything out of the charge. Your Honor, it would have to... Both consideration of the charge as well as other documents in the record. Exactly what other documents? That would be the appellate court's decision. What's the case that says we can rely on an appellate court decision? Your Honor, this court has stated in Valdevinas-Torres, as well as recently in Medina-Lara, that the charging paper may be considered in combination with other documents in the record to determine whether Petitioner was convicted of an aggravated felony. Yeah, but it's not the charging documents. It's other documents in the record. Is there any case that says you can rely on an appellate court opinion? Your Honor, there's nothing out there that has actually addressed that issue. Specifically, in terms of this matter, when you have an appellate court that is not a fact-finding body, but that relies and has to rely on the determinations of the lower court. Here, we're looking at specific language that the appellate court cited that specified what the jury had determined, which was that the jury verdict was based on the charges, or it was the jury found the Petitioner guilty as charged. But so the jury wasn't given any kind of special interrogatories, right? Your Honor, there's not... At least from what we know. We don't know that they were. Let's put it that way. Correct, Your Honor. Okay. All we know is that... When the appellate court is looking at the case, they're just looking to see whether there was enough evidence to convict the defendant on some theory under the statute. Any theory is good enough for an appellate court, right? Your Honor, that would be... Well, the appellate court in this case... They're not saying what the jury actually found because we don't have any way of knowing what the jury actually found because the jury didn't issue us any kind of special findings. So the appellate court is simply looking to see is there enough evidence for the defendant to have been convicted on some theory under 273a, right? Your Honor, well, the appellate court had to rely... It could not look beyond the record in terms of making its determination. So it had to rely on the facts. Do we need to know on which theory the jury was instructed? Yes, Your Honor. And that's not in the record. The appellate court's decision does specify because petitioner challenged the jury instructions that were provided. And the appellate court... Why didn't the government submit the jury instruction? I mean, if you had submitted the jury instruction which said which theory... Because the California jury instruction, it has those little brackets, you know, when you pick and choose which theory you're instructing. Sometimes, you know, the government wants the instruction to charge every level and then the jury can find what it finds within it. But sometimes it's more specific and they strike the language within the bracket. And so it would be helpful to us to know how the jury was instructed. Yes, Your Honor, I believe it would be helpful as well to my argument. So why didn't you submit the jury instruction? And the jury verdict. That to me is more relevant than the Court of Appeal decision. The Department of Homeland Security, in terms of the evidence that was presented, I'm not quite sure what motivated or their ability to access some of the documentation. They got the charges. They were able to receive the charges, but unfortunately, I cannot tell the court and it's not in the record as to why the... But isn't it the government's burden to prove that he committed a crime of violence? Your Honor, while it is, it wasn't an issue here below in the immigration proceedings. Part of the challenge was that in proceedings where Petitioner was actually represented before the immigration judge, then Petitioner's counsel did not challenge the issue of immovability. But the BIA dealt with it in detail. I mean, the waiver argument just doesn't go anywhere when they dealt with it in detail. Yes. So going back to the answer, I mean, if we can't tell what the jury was instructed on, if it's ambiguous, that again, the burden of the uncertainty falls on the government, right? Because it's your burden. Yes, Your Honor. Okay. So in this regard, then, because the appellate court's decision does also reflect the jury's instructions that were relied upon. And in that regard, then the court would take a look at that as well as the enhancement, because the enhancement is an element of the crime. Here, the jury had to determine whether or not Petitioner had personally inflicted great bodily injury on his newborn. It's not an element. It is, Your Honor. It's like an element. Your Honor. It's not an element of the underlying offense. Your Honor, at least under the board's recent precedent as well as the court's determination in Winn, then if the jury is required to make that finding in order to allow for the enhancement, then it is considered an enhancement. So, I'm sorry, it's considered an element. So in that regard, then, it would be a factor. We do have the charging document. Yes, Your Honor. Correct? Yes, Your Honor. And the charging document basically tracks the statute except it says, and. Yes, Your Honor. Right? And the jury verdict comes back and says, as charged. Correct. So he could have been convicted, all of these, right? Correct, Your Honor. And if he was convicted. Or less than all. Doesn't Young say? Young says you take the least. The government always charges in the conjunctive, but it has to prove in the disjunctive, and that's what Young says. Back on the jury instructions for a second. So the appellate court opinion says the jury was instructed on the definition of child abuse site instruction 9.37. And that's the bracketed either or thing that Judge Wardlaw was talking about before, which has all of the possibilities in it. So for all we know from the appellate court decision, the jury was instructed on all of the theories of liability or responsibility under 273A. Yes, Your Honor. Including the negligence version. Yes, Your Honor. Okay. And that is what we would argue. I don't think that helps you, though. I mean, because we don't know which one they pick. Because those things say or. But in order to determine, and if there is, because if it is in the conjunctive as charged, if you look at all the documents as a whole, the charging document is necessarily reviewed along with the appellate court's decision as well as the jury instructions in combination, then that would allow for a determination that Petitioner was convicted under the second branch of conduct, which requires the general criminal intent. And if it's considered under the second branch, then it is a crime of violence. And that goes to the third question. Essentially, the question is not only whether or not it required use or attempted use of force, but it also is a question of whether, at a minimum, the enhanced felony child abuse offense was based upon direct infliction and, therefore, by its nature, involved a substantial risk that physical force was used. When you take a look at the enhancement as well as the statute, you take a look at that second branch, it does involve and necessarily involves a substantial risk that there would be physical force that was applied. You know, I'm reading this. Is this the appellate opinion that you're talking about? Is it the? I paid us $285 to $296, Your Honor. Well, is it L-K? N-Ray, the people versus L-K? I'm sorry. You're in terms of the decision. The decision. This is the. It's not that one. Which is the one? Because that one, it upholds the verdict based on, it sounds like the jury was instructed in all elements and then the court of appeal just picked one. They said by not acting, she violated the statute. Your Honor, in the decision, Your Honor is referencing L-K as a California state case where they determined that the petitioner or the defendant in that matter had driven over a child and they said that the jury, there wasn't no evidence that the jury actually determined that the defendant was aware that they had run over a child as opposed to just running over an object or an item. Someone else was held guilty for not reporting it, not taking the child to the hospital. Yes, Your Honor. So, you know, the jury instructions that were in effect at that time, they were called CALJEC, California Jury Approved Instructions. Yes, Your Honor. As Judge Wardlaw mentioned, we, as a state court judge, we relied basically on the jury instructions that were provided in what we called CALJEC. And I don't know if you looked at them in this particular case. Yes, I did. But the instructions that were available about that time break down the statute into two parts, but each part, it provides that, I'll just give you an example. It said, this is the, I think it's back in 97 or 98, and then the statute, the instruction was changed in 2002. But it says, like, point one, and Judge Wardlaw is right, you know, it gives you some options, and the judge strikes out and does things with the instructions to make it fit the particular theory of the case. But in each one of these provisions, it provides that, for example, one, a person, and this is, I think, the direct part of the statute, it says, a person willfully caused or willfully, and as a result of criminal negligence, permitted a child to suffer unjustifiable physical pain or mental suffering. Then it has in a bracket, or. You can either include or, or you can delete it. Then it has another approach, another way in which a statute could be violated. A person who had care or custody of a child willfully caused or willfully, and as a result of criminal negligence, permitted the child to be injured. Or willfully caused or willfully, and as a result of criminal negligence, permitted the child to be placed in a situation where his or her personal health was in danger. So both ways in which the statute could, both means by which the statute could be violated could be violated with these different approaches, with these different theories of criminal intent. Negligence. Not if it was under the inflicted unjustifiable pain or suffering branch of conduct. And that case law makes clear that because there are four branches, the three and those that you mentioned require criminal negligence, whereas the one, the infliction of unjustifiable pain or mental suffering is the one that has the requisite criminal intent for purposes of determining that it is a crime of violence. And both Valdez and Sargent had, are the primary cases that reflect that analysis and subsequent case law in the California Supreme Court have also expounded upon that. Well, even in 2002, they were still setting it up the same way that I just read to you. Anyway. And I do see my time is up. And in this matter, I'd like to conclude briefly, if I may. Yes, please conclude. The matter here, the question presented is a challenging one. The only way the court can resolve it, though, is determine, first of all, whether it's a divisible statute. And that would require that the court wait to see what the disposition of Rendon is. And because it is influx, the court can't resolve that until Rendon is issued. The case otherwise.  Your Honor, Rendon then does question, it raises questions as to how it is to be construed in terms of the divisibility of the statute. Because the court cannot then take upon a modified categorical analysis without first concluding that it's a divisible statute. So your point is that DeCamps doesn't do it? Not, yes. Even though DeCamps tells us to look to the elements, focus on the elements. Yes, Your Honor, because the court's decision in Rendon also discussed how, well, if it's not clear what the jury had to determine in order to reach a conviction, or if the jury could make a determination on different charges, then it may or may not be divisible. It takes on the elemental analysis of DeCamps. A little bit further. Yes. Thank you, Your Honor. Thank you very much, counsel. Do you have anything additional to say? One thing that I just would like to point out about the enhancement. The enhancement does not require that the petitioner use any force, even if it's considered an element, which it is not. But even if it is, it doesn't require that the petitioner use any force. With the enhancement, all that has to be done is that the person cause an injury. And that causing of the injury can be done through negligent action. So you can negligently cause the injury and still be found guilty of that enhancement. That enhancement does not help. Willfully. Willfully. Negligently cause an injury. Exactly. The volition caused to do something causes an injury, but that's not, doesn't require force. The BIA didn't even rely on the enhancement. Certainly not, Your Honor. So under, I mean, the Chenery Doctrine, we're not supposed to be relying on things that the BIA didn't rely on. I think that's right. But if you got there, it doesn't help respondents. And then the only other point I want to make is, with regard to prong two, respondent is incorrect that prong two is going to allow any sort of help for them. Because prong two says inflicts physical pain or mental suffering. And there's no way that the infliction of mental suffering requires physical force to be completed. So even under prong two, a general intent prong, if that's a general intent prong, it doesn't help prove that this is a crime of violence. And I guess the last point I want to make is, I do think that the court, I think that petitioner would be successful under an indivisible theory. So if this court would like briefing on that, even just now, I don't think you need to wait for Renda, and I think we could provide that, and that could resolve the issue under the indivisible analysis. Because if we look at the underlying documents. The jury instructions, in effect, at the time, which Judge Pez was talking about a moment ago, that were listed. And then the verdict. And the verdict. Well, just the fact that he was convicted, plus the information, without even getting to any of that, just looking at the, I think just looking at the statutory language itself under the categorical, there's an argument under Decomp that, a pretty good argument under Decomp that it's an indivisible statute, and that these are just means. After you find that the circumstances were likely to cause GBI, it's just means to getting to a conviction at that point. So I think it could be helpful for this court to have additional supplemental briefing on that in light of Decomp. Yeah, we'll talk about it in issue order. Excellent, thank you. I appreciate your doing that. All right, thank you very much. Ramirez versus Holder will be submitted. Garcia-Chavez was submitted on the briefs.
judges: Kennelly, Wardlaw, Paez